**IN THE UNITED STATES DISTRICT COIURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**(Lynchburg Division)**

| | | |
|---|---|---|
| JUNE CARROLL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 6:20-CV-00047 |
| | ) | |
| WELLS FARGO BANK, | ) | |
| NATIONAL ASSOCIATION, | ) | |
| | ) | |
| Defendant/Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CROY CONTRACTING, INC., | ) | |
| | ) | |
| Third-Party Defendant/Fourth-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICAH B. FORD & SONS LLC | ) | |
| | ) | |
| Fourth-Party Defendant. | ) | |

**AMENDED FOURTH-PARTY COMPLAINT**

COMES NOW, the Third-Party Defendant, Croy Contracting, Inc. (hereinafter "Croy"),

by and through the undersigned counsel, and files its Amended Fourth-Party Complaint seeking

contribution from the Fourth-Party Defendant Micah B. Ford and Sons, LLC ("Ford"). In support

thereof, Croy states as follows:

1. Plaintiff, June Carroll (hereinafter "Plaintiff"), filed a Complaint against Wells Fargo

    Bank, National Association, wherein she claimed that she suffered personal injuries

    as a result of a fall that occurred on August 30, 2019, at the Wells Fargo Bank located

at 3408 Candlers Mountain Road, Lynchburg, Virginia (the "Premises"). Attached

herein as **Exhibit "A"** is a copy of Plaintiff's Complaint.

2.  Plaintiff alleges that her fall was due to "an abrupt change in elevation of the curbing

    which was not marked or painted in any way." (Exhibit "A" ¶4)

3.  On or about September 28, 2020, Wells Fargo Bank, National Association

    (hereinafter "Wells Fargo") filed a Third-Party Complaint wherein it claimed breach

    of contract, breach of express warranty, breach of implied warranty, and negligence

    by Croy relating to work done at the Premises. Attached as **Exhibit "B"** is a copy of

    Wells Fargo's Third-Party Complaint.

4.  In the Third-Party Complaint, Wells Fargo specifically alleges that Croy entered into

    a contract to perform work on the Premises and that it had a duty to perform the

    "construction of the curbing in a competent and reasonable manner, with due care in

    accordance with the standards of the industry" (Exhibit B, ¶29) and that if Plaintiff

    recovers a judgment against Wells Fargo, that Wells Fargo is entitled to

    "indemnification and/or contribution from Croy, the party who failed to properly

    perform the construction of the curbing in question." (Exhibit B, ¶31)

5.  On or about July 15, 2019, Ford entered into an agreement with Croy to remove the

    existing concrete at the front entrance of the Premises and replace with new concrete.

6.  To the extent that Carroll proves her allegations, the legal exposure to Croy is a direct

    result of Ford's work at the Premises.

7.  In the event that Wells Fargo recovers a judgment against Croy, Croy is entitled to

    contribution from Ford for all or part of the amount of damages that may be awarded

    against Croy.

## COUNT I (Negligence)

8. Croy hereby adopts and incorporates by reference the allegations set forth in
   paragraphs 1-7 as if the same were set forth here in their entirety.

9. Ford had a duty to perform its work on the curbing at the Premises in a competent and
   workmanlike manner, in accordance with the standards of the industry.

10. To the extent that Carroll proves the allegations in her complaint, Ford has breached
    its duties.

11. In the event that Carroll recovers a judgment for damages alleged in her Complaint,
    and Wells Fargo recovers a judgment for damages against Croy, Croy is entitled to
    contribution from Ford for all or part of the amount of damages that may be awarded
    against it, including interest, expenses, and costs.

WHEREFORE, the Third-Party Defendant/Fourth-Party Plaintiff, Croy Contracting, Inc.,
by counsel, requests that this court enter judgment against Micah B. Ford and Sons, LLC for
contribution to any judgments that may be recovered against Croy Contracting, Inc., in the above
styled action. Croy Contracting, Inc., further prays that it be awarded its costs and attorneys' fees
from Micah B. Ford and Sons, LLC as entitled by law, together with such other and further relief
as to this court deems just and proper.

**A JURY TRIAL IS REQUESTED.**

Respectfully Submitted,

CROY CONTRACTING, INC.

By: /s/ *Donald E. Morris*

Donald E. Morris, Esq. (VSB #72410)
Robert Harrington & Associates
1011 Boulder Springs Drive, Ste. 250
Richmond, Virginia 23225
Direct: (804) 422-6161; Fax: (855) 721-4005
E-mail:  donald.morris@selective.com

*Counsel for Third-Party Defendant,*
*Fourth-Party Plaintiff, Croy Contracting, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2021, the foregoing document was served via ECF, to the following counsel:

| | |
|---|---|
| James B. Feinman, Esq.<br>Blake K. Huddleston, Esq.<br>James B. Feinman & Associates<br>1003 Church Street<br>PO Box 697<br>Lynchburg, Virginia 24505<br>Tel.: (434) 846-7603; Fax: (434) 846-0158<br>E-mail: jb@jfeinman.com<br>E-mail: blake@jfeinman.com<br><br>*Counsel for Plaintiff June Carroll* | Matthew L. Liller, Esq.<br>Kalbaugh, Pfund & Messersmith, P.C.<br>2840 Electric Road, Suite 111<br>Roanoke, VA 24018<br>Tel.: (540) 776-35836<br>Fax: (540) 776-1542<br>Matthew.Liller@kpmlaw.com<br><br>Brian A. Cafritz, Esq.<br>Jessica G. Relyea, Esq.<br>Kalbaugh, Pfund & Messersmith, P.C.<br>901 Moorefield Park Drive, Suite 200<br>Richmond, VA 23236<br>Tel.: (804) 320-6300; Fax: (804) 320-6312<br>E-mail: Brian.Cafritz@kpmlaw.com<br>E-mail: Jessica.Relyea@kpmlaw.com<br><br>*Counsel for Defendant / Third–Party Plaintiff*<br>*Wells Fargo, National Association* |

/s/  *Donald E. Morris*
Donald E. Morris

I hereby also certify that on May 24, 2021, the foregoing document was served via e-mail only to the below counsel:

| | |
|---|---|
| Mark J. Peake, Esq.<br>Caskie & Frost<br>2306 Atherholt Road<br>Lynchburg, Virignia 24501<br>Tel.: (434) 846-2731; Fax: (434) 845-1191<br>E-mail: MPeake@caskiefrost.com<br><br>*Counsel for Fourth-Party Defendant Micah B. Ford & Sons LLC* | |

/s/  *Donald E. Morris*
Donald E. Morris

VIRGINIA:    IN THE CIRCUIT COURT FOR CAMPBELL COUNTY

JUNE CARROLL,

       *Plaintiff*,

v.                                **COMPLAINT**

WELLS FARGO BANK, NATIONAL ASSOCIATION,

PLEASE SERVE REGISTERED AGENT:
CORPORATION SERVICE COMPANY
100 Shockoe Slip, Floor 2
Richmond, VA 23219-4100

       *Defendant*.

---

NOW into Court, through undersigned counsel, comes Plaintiff, June Carroll, and moves the Court for judgment against Defendant, Wells Fargo Bank, National Association, on the grounds and in the amount set forth below:

1.    At all times relevant hereto, Defendant, Wells Fargo Bank, National Association (hereinafter "*Wells Fargo*"), was a foreign corporation having a registered agent located at 100 Shockoe Slip, Floor 2, Richmond, Virginia 23219-4100.

2.    At all times relevant hereto, Plaintiff, June Carroll, was a 72-year-old resident of Buford, Georgia.

3.    On August 30, 2019, Plaintiff was a customer and invitee of Wells Fargo located at 3408 Candlers Mountain Road in or near the City of Lynchburg, Virginia.

4.    As Plaintiff exited Wells Fargo, she did not see or recognize the abrupt change in elevation of the curbing, as it was not marked or painted in any way to warn of the change in elevation.  More specifically, there were no detectable warnings or

{3538 / 000}1

paint marking the dangerous condition as required by the Americans with Disabilities Act, and by the law of Virginia.

5.     As a result thereof, suddenly, and without warning, Plaintiff fell off of the curbing and onto both legs with great force.  Plaintiff sustained a fractured right ankle and fractured left foot as a result.

6.     Wells Fargo, a place of business to which the general public is invited, had a duty to the Plaintiff, as its invitee, to maintain the premises in a reasonably safe condition, to conduct reasonable inspections to determine whether any safety concerns exist, and to warn the public of any such dangerous conditions known, or which should have been known, to Wells Fargo, its agents, and/or employees.

7.     Notwithstanding said duties, Wells Fargo, its agents and/or employees, allowed the sidewalk, a commonly traveled area upon which its invitees and the general public customarily pass over, to remain in such a way to present a hazardous condition. Wells Fargo, its agents and/or employees, failed to give warning or notice of the danger, even though Wells Fargo, its agents and/or employees knew – or in the exercise of reasonable care, should have known – that the hazardous condition existed.

8.     Defendant, Wells Fargo, was negligent and breached its duty of care in that:

     a.  it failed to properly maintain its sidewalk free from a dangerous condition in this commonly traveled area;

     b.  it failed to prevent an unreasonable risk of harm to its customers, invitees, and the general public;

{3538 / 000}2

Exhibit "A" – Page 2 of 4

    c.  it failed to adequately warn its customers, invitees, and the general public

of the dangerous condition presented by the abrupt change in elevation of

the curbing, although Defendant knew, or in the exercise of reasonable

care should have known, that the dangerous condition existed;

    d.  it failed to take the appropriate efforts to protect its customers, invitees,

and the general public from the dangers presented by the abrupt change

in elevation of the sidewalk's curbing;

    e.  it failed to comply with the Americans with Disabilities Act, and Virginia

law, by failing to provide detectable warnings or painting to mark the

dangerous condition, and Plaintiff, June Carroll, is in the class or group of

citizens these laws are intended to protect; and

    f.  it failed to fulfill its duty in other ways as discovery will reveal.

9.    As a direct and proximate result thereof, Plaintiff sustained serious and

permanent bodily injuries, has been forced to incur substantial hospital and doctors' bills

in an effort to be cured of said injuries, and has suffered, and will continue to suffer,

great physical pain, embarrassment, emotional distress, and anxiety.


WHEREFORE, Plaintiff, June Carroll, demands judgment against Defendant,

Wells Fargo Bank, National Association, in the amount of **TWO MILLION, FIVE**

**HUNDRED THOUSAND DOLLARS ($2,500,000.00)**, and her costs expended in this

action, as well as all other relief that law and equity may provide.

Respectfully Submitted,

June Carroll

By: _____
                Of Counsel

James B. Feinman, Esq. (VSB # 28125)
Blake K. Huddleston, Esq. (VSB #93572)
James B. Feinman & Associates
1003 Church Street
PO Box 697
Lynchburg, Virginia 24505
434-846-7603
434-846-0158 (*facsimile*)
jb@jfeinman.com
blake@jfeinman.com
*Counsel for Plaintiff*

{3538 / 000}4

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
(Lynchburg Division)**

JUNE CARROLL,      :
            :
  Plaintiff,      :
            :
v.           :  Civil Action No.: 6:20-CV-00047
            :
WELLS FARGO BANK,     :
NATIONAL ASSOCIATION   :
            :
  Defendant/Third Party Plaintiff, :
            :
v.           :
            :
CROY CONTRACTING, INC.,   :
            :
  Third Party Defendant.   :

## THIRD PARTY COMPLAINT

   COMES NOW the defendant/third party plaintiff, WELLS FARGO, NATIONAL ASSOCIATION ("Wells Fargo"), by counsel and files the following Third Party Complaint seeking indemnification and/or contribution from the defendant, Croy Contracting, Inc. ("Croy"). In support thereof, Wells Fargo states as follows:

## FACTS

   1.  In the above-styled action, June Carroll ("Carroll"), filed a Complaint against Wells Fargo seeking recovery for alleged personal injuries that she suffered as the result of a fall that occurred on August 30, 2019 at the Wells Fargo Bank located at 3408 Candlers Mountain Road in Lynchburg, Virginia (the "Premises"). (*See* **Exhibit A**: Plaintiff's Complaint)

   2.  Specifically, Carroll alleges that she fell on the Premises because of an "abrupt change in elevation of the curbing" which was "not marked or painted in any

1

way" and had "no detectable warnings or paint marking the dangerous condition as required by the Americans with Disabilities Act and Virginia law." (*See* Ex. A. ¶¶ 4)

3.    Carroll alleges that Wells Fargo negligently failed to properly maintain its sidewalk, prevent unreasonable risk, adequately warn, take appropriate efforts to protect, comply with the ADA and Virginia law, and fulfill its duty "in other ways as discovery will reveal." (*See* Ex. A ¶¶ 8)

4.    Prior to Carroll's fall, Wells Fargo entered into a Contract with Croy (hereinafter "the Contract"), the terms of which described and controlled the terms, duties and obligations of Croy for services it provided to Wells Fargo. (*See* **Exhibit B**: Purchase Order)

5.    Pursuant to the Contract, Croy was to provide the materials and to construct the curbing upon which Plaintiff was allegedly injured.

6.    Pursuant to the Contract, Croy was to construct the curbing in a manner that would "comply with all applicable statutes, acts, ordinances, laws, rules, regulations, codes and standards." (*See* Ex. B ¶ 8)

7.    On or about June 13, 2019, Croy performed the construction of the curbing that allegedly caused Carroll's fall and resulting injuries.

8.    Wells Fargo relied on each of the terms and warranties, express and/or implied, in the Contract and on Croy's ability to safely and competently carry out the performance of its duties.

9.    Upon information and belief, pursuant to the Contract, Croy was under a duty to have been a named insured on a Commercial General Liability Insurance policy with a combined single limit of not less than $1,000,000.

2

10.     Upon information and belief, pursuant to the Contract, Croy was to have Wells Fargo named as an additional insured on Croy's Commercial General Liability Insurance policy.

**Count I**
(Breach of Contract)

11.     Wells Fargo incorporates the allegations in paragraphs 1-10 into this paragraph as if fully set forth in its entirety.

12.     Croy executed a Contract with Wells Fargo to govern the terms of the commercial relationship between the parties.

13.     Wells Fargo relied upon the various terms of the Contract in the manner in which it structures and operates its business.

14.     Upon information and belief, in the Contract, Croy agreed to maintain Commercial General Liability Insurance and to name Wells Fargo as an additional insured on the policy.

15.     Upon information and belief, in the Contract, Croy agreed to indemnify and defend Wells Fargo from and against all liability, including claims for personal injury, resulting from, caused by or in connection with the Contract and/or Croy's breach of the Contract.

16.     On or about September 16, 2020, Wells Fargo made demands upon Croy to defend, indemnify, and hold it harmless for the claims raised by Carroll.

17.     Croy has rejected Wells Fargo's demand for indemnification and defense of Carroll's claims.

18.     Croy has breached the terms of the Contract by rejecting Wells Fargo's demand for defense and indemnification, and by failing to provide Wells Fargo with

proper insurance coverage.  Further, if the allegations alleged by Plaintiff are proven, Croy has further breached its contract and by failing to comply with the warranties, promises and obligations required under the Contract.

19.     To the extent that Carroll proves its allegations against Wells Fargo, the legal exposure to Wells Fargo is a direct result of the acts or omissions of Croy, its services, and its breach of the warranties and promises (both express and implied) that were made to Wells Fargo, and is further a direct result of Croy's breach of the duties and obligations in the Contract.

20.     In the event that Carroll recovers a judgment against Wells Fargo, Wells Fargo is entitled to indemnification from Croy due to Croy's breach of the Contract.

21.     Pursuant to the default provisions of the Contract, Wells Fargo is entitled to recover any and all increased costs and expenses, (including attorney's fees) in connection with the default.

**Count II**
(Breach of Express Warranty)

22.     Wells Fargo incorporates the allegations in paragraphs 1-21 into this paragraph as if fully set forth in its entirety.

23.     Upon information and belief, in the Contract, Croy expressly warranted, among other things, that it would perform the curb construction in a manner that would "comply with all applicable statutes, acts, ordinances, laws, rules, regulations, codes and standards." (See Ex. B ¶ 8).

24.     To the extent Carroll recovers a judgment against Wells Fargo for the personal injuries she allegedly sustained as a result of the construction of the curbing, Croy has breached its express warranty to Wells Fargo, and Wells Fargo is entitled to

4

indemnification and/or contribution from Croy, who was contracted to construct the curbing.

## Count III
### (Breach of Implied Warranty)

25.    Wells Fargo incorporates the allegations in paragraphs 1-24 into this paragraph as if fully set forth in its entirety.

26.    Croy impliedly warranted to Wells Fargo that all of its work would be done in a good and workmanlike manner with proper skill, workmanship and quality.

27.    To the extent Carroll recovers a judgment against Wells Fargo for the personal injuries she allegedly sustained as a result of the construction of the curbing, or that Croy's work was negligent or that it failed to comply with the any statutes, acts, ordinances, laws, rules, regulations, codes and standards, Croy has breached its implied warranties to Wells Fargo, and Wells Fargo is entitled to indemnification and/or contribution from Croy, who was contracted to construct the curbing.

## Count IV
### (Negligence)

28.    Wells Fargo incorporates the allegations in paragraphs 1-27 into this paragraph as if fully set forth in its entirety.

29.    Croy had a duty to perform the construction of the curbing in a competent and reasonable manner, with due care in accordance with the standards of the industry.

30.    To the extent that Carroll proves the allegations in her Complaint, Croy has breached its duties of care to Wells Fargo.

31.    In the event that Carroll recovers a judgment against Wells Fargo for damages resulting from the facts alleged in her Complaint, Wells Fargo is entitled to

indemnification and/or contribution from Croy, the party who failed to properly perform the construction of the curbing in question.

WHEREFORE, the Defendant/Cross-Plaintiff, WELLS FARGO BANK, NATIONAL ASSOCIATION, by Counsel, requests that this court enter judgment against CROY CONTRACTING, INC. for indemnification and/or contribution of any judgments that may be recovered against Wells Fargo by plaintiff in the above styled action. Wells Fargo further prays that it be awarded expenses, costs and attorney's fees from Croy as entitled by law and as provided for in the Contract, as well as interest from the date such costs and fees were incurred.

*/s/ Matthew L. Liller*
Brian A. Cafritz, Esq. (VSB #34366)
Jessica G. Relyea, Esq. (VSB #76775)
KALBAUGH PFUND & MESSERSMITH, P.C.
901 Moorefield Park Drive, Suite 200
Richmond, Virginia 23236
(804) 320-6300
(804) 320-6312 (fax)
Brian.Cafritz@kpmlaw.com
Jessica.Relyea@kpmlaw.com

Matthew L. Liller, Esq. (VSB #86451)
KALBAUGH PFUND & MESSERSMITH, P.C.
2840 Electric Road, Suite 111
Roanoke, Virginia 24018
(540) 776-3583
(540) 776-1542 (fax)
Matthew.Liller@kpmlaw.com

*Counsel for Defendant Wells Fargo Bank,
National Association*

# EXHIBIT A

VIRGINIA:    IN THE CIRCUIT COURT FOR CAMPBELL COUNTY

JUNE CARROLL,                                          *
                                                       *
            *Plaintiff*,                               *
                                                       *
v.                                                     *          **COMPLAINT**
                                                       *
WELLS FARGO BANK, NATIONAL ASSOCIATION,                *
                                                       *
PLEASE SERVE REGISTERED AGENT:                         *
CORPORATION SERVICE COMPANY                            *
100 Shockoe Slip, Floor 2                              *
Richmond, VA 23219-4100                                *
                                                       *
            *Defendant*.                               *
                                                       *

NOW into Court, through undersigned counsel, comes Plaintiff, June Carroll, and moves the Court for judgment against Defendant, Wells Fargo Bank, National Association, on the grounds and in the amount set forth below:

1.    At all times relevant hereto, Defendant, Wells Fargo Bank, National Association (hereinafter "*Wells Fargo*"), was a foreign corporation having a registered agent located at 100 Shockoe Slip, Floor 2, Richmond, Virginia 23219-4100.

2.    At all times relevant hereto, Plaintiff, June Carroll, was a 72-year-old resident of Buford, Georgia.

3.    On August 30, 2019, Plaintiff was a customer and invitee of Wells Fargo located at 3408 Candlers Mountain Road in or near the City of Lynchburg, Virginia.

4.    As Plaintiff exited Wells Fargo, she did not see or recognize the abrupt change in elevation of the curbing, as it was not marked or painted in any way to warn of the change in elevation.  More specifically, there were no detectable warnings or

paint marking the dangerous condition as required by the Americans with Disabilities Act, and by the law of Virginia.

5.      As a result thereof, suddenly, and without warning, Plaintiff fell off of the curbing and onto both legs with great force.  Plaintiff sustained a fractured right ankle and fractured left foot as a result.

6.      Wells Fargo, a place of business to which the general public is invited, had a duty to the Plaintiff, as its invitee, to maintain the premises in a reasonably safe condition, to conduct reasonable inspections to determine whether any safety concerns exist, and to warn the public of any such dangerous conditions known, or which should have been known, to Wells Fargo, its agents, and/or employees.

7.      Notwithstanding said duties, Wells Fargo, its agents and/or employees, allowed the sidewalk, a commonly traveled area upon which its invitees and the general public customarily pass over, to remain in such a way to present a hazardous condition. Wells Fargo, its agents and/or employees, failed to give warning or notice of the danger, even though Wells Fargo, its agents and/or employees knew – or in the exercise of reasonable care, should have known – that the hazardous condition existed.

8.      Defendant, Wells Fargo, was negligent and breached its duty of care in that:

    a.  it failed to properly maintain its sidewalk free from a dangerous condition in this commonly traveled area;

    b.  it failed to prevent an unreasonable risk of harm to its customers, invitees, and the general public;

{3538 / 000}2

   c.  it failed to adequately warn its customers, invitees, and the general public
       of the dangerous condition presented by the abrupt change in elevation of
       the curbing, although Defendant knew, or in the exercise of reasonable
       care should have known, that the dangerous condition existed;

   d.  it failed to take the appropriate efforts to protect its customers, invitees,
       and the general public from the dangers presented by the abrupt change
       in elevation of the sidewalk's curbing;

   e.  it failed to comply with the Americans with Disabilities Act, and Virginia
       law, by failing to provide detectable warnings or painting to mark the
       dangerous condition, and Plaintiff, June Carroll, is in the class or group of
       citizens these laws are intended to protect; and

   f.  it failed to fulfill its duty in other ways as discovery will reveal.

   9.      As a direct and proximate result thereof, Plaintiff sustained serious and
permanent bodily injuries, has been forced to incur substantial hospital and doctors' bills
in an effort to be cured of said injuries, and has suffered, and will continue to suffer,
great physical pain, embarrassment, emotional distress, and anxiety.


   WHEREFORE, Plaintiff, June Carroll, demands judgment against Defendant,
Wells Fargo Bank, National Association, in the amount of **TWO MILLION, FIVE
HUNDRED THOUSAND DOLLARS ($2,500,000.00)**, and her costs expended in this
action, as well as all other relief that law and equity may provide.


{3538 / 000}3

Respectfully Submitted,

June Carroll

By: _____
            Of Counsel

James B. Feinman, Esq. (VSB # 28125)
Blake K. Huddleston, Esq. (VSB #93572)
James B. Feinman & Associates
1003 Church Street
PO Box 697
Lynchburg, Virginia 24505
434-846-7603
434-846-0158 (*facsimile*)
jb@jfeinman.com
blake@jfeinman.com
*Counsel for Plaintiff*

{3538 / 000}4

# EXHIBIT B

# Corporate Properties Group

Purchase order: 4500094231
Original Date: 05/31/2019



**Please reference purchase order number on all billing documents to avoid returned invoices.**

| Supplier address: | Purchase order information: |
|---|---|
| CROY CONTRACTING INC<br>PO BOX 19354<br>ROANOKE VA 24019<br>Phone/Fax   540-342-4645 /<br>Email: CCICONTRACTING@CROY1.COM | Project Number: 360968<br>Total value of PO: 14,400.00  USD<br><br>Contact Person: Jeff Hunnell<br>Phone: 540-563-7058<br>Email: jeffrey.hunnell@wellsfargo.com |
| **Service/ship to address:** | **Bill to:** |
| River Ridge<br>3408 Candlers Mountain Rd<br>LYNCHBURG VA 24502-2214<br>Building / BE #: 142647 | WELLS FARGO BANK NA<br>P.O. Box 49630<br>MAC: D1185-023<br>Charlotte, NC 28277<br><br>Submit Invoice to: CPGAPInvoices@wellsfargo.com |

| Line item | Product/service description | Order qty | UOM | Estimated delivery date | Unit price | Net amount (USD) |
|---|---|---|---|---|---|---|
| 1 | ***Amount Invoiced***<br>Concrete Materials | 1.000 | EA | 06/13/2019 | ███ | ███ |
|   | Notes to vendor: | | | | | |
| 2 | ***Amount Invoiced***<br>Concrete Labor | 1.000 | EA | 06/13/2019 | ███ | ███ |
|   | Notes to vendor: | | | | | |
| 3 | ***Amount Invoiced***<br>DEMO Labor and Materials | 1.000 | EA | 06/13/2019 | ███ | ███ |
|   | Notes to vendor: | | | | | |
| 4 | ***Amount Invoiced***<br>Seal Coat Materials | 1.000 | EA | 06/13/2019 | ███ | ███ |
|   | Notes to vendor: | | | | | |
| 5 | ***Amount Invoiced***<br>Seal Coat Labor | 1.000 | EA | 06/13/2019 | ███ | ███ |
|   | Notes to vendor: | | | | | |
| 6 | ***Amount Invoiced***<br>Supervision | 1.000 | EA | 06/13/2019 | ███ | ███ |
|   | Notes to vendor: | | | | | |

| Total net value | ███ | USD |
|---|---|---|

Please note: Face coverings must be worn at all times in a Wells Fargo space when employees or other service providers are present. You must comply with all local and state mandates with regard to COVID-19, including, but not limited to, wearing

# Corporate Properties Group

**Purchase order: 4500094231**
**Original Date: 05/31/2019**



**Please reference purchase order number on all billing documents to avoid returned invoices.**

personal protective equipment and completing health screenings. Failure to follow these requirements will result in entry being prevented or removal from the premise.

If anyone you assign to perform services at Wells Fargo either 1) contracts COVID-19, or 2) is quarantined per medical advice, you must verify that person is healthy to return per Wells Fargo policy.
Click here for the requirements.

If a valid, written, master contract exists between Wells Fargo Bank, N.A., or any or its Affiliates (#Wells Fargo") and Vendor, all Products and Services (defined below) provided by Vendor under this Purchase Order will be in accordance with the terms and conditions of such contract. #Affiliates" means the parent company of Wells Fargo, Wells Fargo & Company, and any present or future company that controls, is controlled by, or is under common control with Wells Fargo, including any subsidiary of Wells Fargo & Company as defined under 12 U.S.C. §1841(d). If more than one written contract exists between the parties, Wells Fargo will determine, in its sole discretion, which contract will govern Vendor's performance under this Purchase Order, and if no contract exists, the following terms and conditions will apply:

1.    This Purchase Order is Vendor's authority to proceed with work or furnish Products or Services as set forth in this Purchase Order.  If no contractual arrangements between the Parties exist, by commencing performance hereunder, Vendor expressly agrees to each of the terms and conditions specified in this Purchase Order.  In the event of contrary or inconsistent terms or conditions within an Attachment (as defined below) or an existing contract between the parties or this Purchase Order, the following order of precedence will apply: the contract, this Purchase Order and then the Attachment.  #Attachment" is defined as a written document provided to Wells Fargo by Vendor, or on behalf of Vendor, that sets out the proposal by which Vendor intends to perform the Services or provide the Products contemplated by the Purchase Order.  Information in the Attachment may include, without limitation, equipment specifications, installation details, schedules, location, cost, warranties, etc., or other information pertaining to the Products or Services supplied by Vendor pursuant to this Purchase Order.

2.    "Products" and/or "Services" mean the products and/or services as described in this Purchase Order.  Wells Fargo may revise or terminate this Purchase Order at any time by providing written notice to Vendor and, in such event, will pay only for Products and Services received by Wells Fargo before the effective date of revision or termination.

3.    Vendor warrants that all Products conform to the description set forth above, are merchantable, of good quality, free from defects in material or workmanship, and free and clear of liens and encumbrances.  Vendor warrants that all Services will be performed in a workmanlike manner in accordance with the description set forth above and the prevailing reasonable commercial standards applicable thereto.  Unless otherwise expressly stated on the face of this Purchase Order, Vendor shall furnish all labor, materials, apparatus and equipment necessary to complete the Services for no additional fees other than what is expressly stated in this Purchase Order.  Vendor warrants that the Products and Services will not infringe against any third party's patent, copyright, trade secret, or other proprietary or intellectual property rights and agrees that the warranties contained herein are cumulative and in addition to any other warranties provided by law.  Vendor warrants that it is the owner of any software licensed to Wells Fargo through this Purchase Order, or Vendor is licensed by the rightful owner to sub-license the software to Wells Fargo.  Vendor further agrees to provide a one year, unconditional warranty on all Products and Services from the date of acceptance by Wells Fargo, in addition to any applicable manufacturer's warranty.   If an Attachment to this Purchase Order contains more favorable warranties to Wells Fargo, then those warranties will govern over the warranties above.

4.    Wells Fargo reserves the right to reject any or all of the Products or Services if:
  a. any such Product or Service fails to comply with the specifications or warranties (express or implied) for such Product or Service as set
   forth in this Purchase Order; or
  b. all of the Products and Services are not received or performed bythe due date set forth above or as otherwise communicated by
   Wells Fargo. Rejected Products may, at Wells Fargo's option, require either Vendor or others to remedy defective Products at
   Vendor's sole cost and expense. Upon demand, Vendor shall refundany payment for rejected Products or Services that are not
   satisfactorily replaced or re-performed by Vendor.  These remediesare cumulative and in addition to any other remedies provided by law.

5.    Until Wells Fargo is in receipt of and has accepted the Products, Vendor assumes the risk and will be responsible for all loss or damages to the Products from any and every cause whatsoever, whether or not such loss or damage is covered by Vendor's insurance.

6.    Wells Fargo will not be obligated to pay any amount in excess of the sum set forth above including any amounts for the cost of extra work, transportation, travel, packing cases, reels, drums or other extras not expressly set forth in the description of the Products and/or Services.

7.    Vendor will invoice Wells Fargo for Products actually delivered and accepted by Wells Fargo or for Services actually rendered by Vendor and accepted by Wells Fargo.  Vendor will comply with the Standard Invoice Requirements outlined below unless otherwise directed by Wells Fargo.  Vendor will ensure all invoices are accurate and correspond to the compensation as set forth above.  Wells Fargo will pay the undisputed amounts in any such invoice no later than forty-five (45) days after Wells Fargo's receipt of such invoice.  Wells Fargo may return non-compliant invoices (i.e. invoices not compliant with the terms of this Purchase Order) to Vendor and Wells Fargo will not be liable for payment until receipt of a compliant invoice.  Payment for Products and/or Services is deemed made when a check is mailed or funds transfer initiated.  Payment of an invoice will not waive Wells Fargo's remedies for defective or rejected Products or Services.

Standard Invoice Requirements:
  a. Invoices must include the following sections and informationand be submitted using a clear, machine readable format.
   i. Header
    1. Vendor Name
    2. Vendor Remit To Address
    3. Unique Invoice Number
    4. Invoice Date
    5. Purchase Order Number (PO#)
    6. Building Entity Number (BE#)
    7. Wells Fargo Service or Delivery Address
    8. Domestic Bill To:
     Wells Fargo`s Legal Entity as listed on PO
     PO Box 49630
     MAC D1185-023
     Charlotte, NC 28277
    International Bill To:  (as instructed on PO)
    9. Delivery or Completion Date

**Corporate Properties Group**

Purchase order: 4500094231
Original Date: 05/31/2019



**Please reference purchase order number on all billing documents to avoid returned invoices.**

          10. Vendor Contact Information
          11. Wells Fargo Contact Name
     ii. Body (One line per Product Delivered or Service Completed)
          1. Detailed Description of Products or Services
          2. Quantity Delivered or Completed (ex. 2 Hrs)
          3. Unit Price or Service Rate (ex. $20/Hr)
          4. Line Amount (ex. Hrs x Service Rate)
          5. Indicate taxable items or tax amount per line
     iii. Summary
          1. Subtotal Pre-Tax
          2. Freight & Handling (where applicable)
          3. Overhead & Profit (where applicable)
          4. Total Tax Amount and Tax %
          5. Total Invoice Amount and Currency (if not USD)
   b. Submit invoices via electronic mail to:
       Domestic: CPGAPInvoices@wellsfargo.com
       International: CPGInternationalAPInvoices@wellsfargo.com (unlessinstructed otherwise)
   c. For invoicing or payment inquiries please contact CPG AP Customer Service:
       Domestic:  CPGAP@wellsfargo.com
       International: CPGInternationalAPInvoices@wellsfargo.com

8.     Vendor is an independent contractor and Vendor and Vendor Personnel (defined below) are not agents, servants or employees of Wells Fargo. Vendor warrants that Vendor's performance hereunder will comply with all applicable statutes, acts, ordinances, laws, rules, regulations, codes and standards including all applicable laws regarding unemployment insurance and the Federal Social Security Act, and Vendor will pay all taxes and contributions which may accrue in connection with the Vendor's performance hereunder.

9.     Without limiting Vendor's liability hereunder, Vendor shall procure and maintain commercial general liability insurance, including coverage for completed operations and blanket contractual liability, with a combined single limit of not less than $1,000,000, and worker's compensation insurance as required by applicable law and employer's liability insurance, including a waiver of subrogation as to Wells Fargo, all of which insurance will name Wells Fargo as an additional insured.  Vendor will furnish a certificate of insurance to Wells Fargo upon request.  The coverages specified above will be kept in force from the date Vendor commences performance under this Purchase Order until the date of final payment by Wells Fargo or until the Services have been completed or Products have been accepted by Wells Fargo (whichever is later).  Vendor shall indemnify, hold harmless and defend Wells Fargo and its directors, officers, employees, agents and those additional entities that Wells Fargo has agreed to hold harmless under any real estate contracts or leases (the "Indemnified Parties") against all liability, including reasonable attorneys' fees and costs, to third parties (other than liability solely the fault of the Indemnified Parties) arising from the acts or omissions of Vendor or its officers, directors, agents or subcontractors (collectively "Vendor Personnel") in the performance of Vendor's obligations hereunder, Vendor's breach hereof, or Services performed on Wells Fargo premises by Vendor Personnel.  Vendor shall also indemnify, hold harmless, and defend the Indemnified Parties against all claims of intellectual property infringement arising from the Products or Services or Vendor's actions hereunder.  Vendor's obligation to indemnify will not be limited by Vendor's insurance coverage and will survive the expiration or termination of this Purchase Order.  Vendor shall, unless otherwise determined by Wells Fargo in its sole discretion, conduct the defense in any such third party action with counsel reasonably acceptable to Wells Fargo.

10.    In the event Services are to be performed to or upon any real property owned, leased or occupied by Wells Fargo, or Products provided to Wells Fargo, the following will apply:
     a. Vendor shall not permit any materialmen's, mechanicsor other liens to attach to the Services or Products, or the premiseswhereon the same is executed or provided.
     b. Payment will be made upon completion of the Services ordelivery of Products to the satisfaction of Wells Fargo and the receiptby Wells Fargo of any lien releases requested by Wells Fargo.
     c. Vendor shall not use any type of material in the performance of Services that is classified by any governmental authority as hazardous materials unless previously approved by Wells Fargo in writing. Vendor shall report to the Wells Fargo Corporate Properties Group ("CPG") any existing hazardous materials encountered by Vendor at the Wells Fargo site where Vendor is providing Services.  Vendor shall not disturb any asbestos–containing materials ("ACM") presumed asbestos containing materials ("PACM"), or suspect asbestos containing materials(#suspect ACM") at any such site without first obtaining written authorization from CPG.  Vendor shall ensure that Vendor and all Vendor Personnel working for or under the direction of Vendor will conform to all applicable ordinances, laws, codes and governmental requirements as they apply to hazardous materials including all employee notification training, physical examinations notices,recording-keeping and other requirements related to any hazardous materials used and/or present at the Wells Fargo site.

11.    Except when Services are provided outside the United States, when Vendor Personnel are on Wells Fargo's premises or have remote access to Wells Fargo's systems, Vendor Personnel shall comply with Wells Fargo's building security, information security, safety, and fire protection policies and procedures. Vendor warrants and agrees that it will cause a third party criminal background check (#Background Check #21") to be conducted by a Wells Fargo preferred background check provider for Vendor Personnel who perform Secure Services (described below) and Vendor Personnel will have been deemed #eligible" by the background check provider prior to the performance of Secure Services by such Vendor Personnel.  Vendor will obtain such Background Check #21 at Vendor's sole expense.  #Secure Services" means:
     a. Services that involve unescorted or unsupervised access beyond  the access controls of a Wells Fargo facility; or
     b. Services that require or reasonably permit access to restricted or Confidential Information, including customer or consumer information; or
     c. Services that require or reasonably permit access to Wells Fargo'scomputer networks, information systems, databases or secure applications under circumstances that would permit modifications thereto.
Upon request, Vendor will provide written evidence that it has complied with all of the foregoing background check requirements.  Regarding Services performed outside of the United States, when Vendor Personnel are on Wells Fargo's premises or have remote access to Wells Fargo's systems, Vendor Personnel shall comply with Wells Fargo's building security, information security, safety, and fire protection policies and procedures. Vendor warrants and agrees that Vendor Personnel that go past the security controls of any Wells Fargo facility will be escorted unless such Vendor Personnel have passed a Wells Fargo approved background check.

12.    Except for information that is generally known or generally available to the public, information concerning Wells Fargo's business is "Confidential Information" and will be maintained in confidence and not disclosed, used, or duplicated by the Vendor, except in connection with Vendor's performance under this Purchase Order.  Vendor may disclose Confidential Information only to person(s) who need it to perform under this Purchase Order, provided, however, that Vendor obtains Wells Fargo's prior written permission before any such disclosure occurs to a person that is not an employee of Vendor.  A breach of Vendor's confidentiality obligations may cause Wells Fargo to suffer irreparable harm in an amount not easily ascertained.  Vendor agrees that such breaches, whether threatened or actual, will give Wells Fargo the right to terminate this Purchase Order immediately and obtain any available equitable or injunctive relief.

**Corporate Properties Group**

Purchase order: 4500094231
Original Date: 05/31/2019



**Please reference purchase order number on all billing documents to avoid returned invoices.**

13.    If Vendor defaults in any respect in the performance of this Purchase Order, or if Vendor becomes insolvent, or if a petition by or against Vendor is filed under any state or federal bankruptcy or insolvency law, then, without prejudice to other rights or remedies, Wells Fargo may cancel this Purchase Order.

14.    In the absence of a contract relating to the subject matter of the Products or Services provided under this Purchase Order, the terms and conditions of this Purchase Order constitute the entire agreement between Vendor and Wells Fargo relating to the Products and Services covered by this Purchase Order and may not be modified in any way unless specifically agreed to in a writing signed by the parties hereto.

15.    If any provision of this Purchase Order is prohibited or invalid under applicable law, such provision will be invalid only to the extent of such prohibition or invalidity, without invalidating any remaining provisions of this Purchase Order.

16.    This Purchase Order will be governed by and interpreted in accordance with the laws of the state where the Service is performed or Product delivered without giving effect to its conflicts of laws principles.  No part of this Purchase Order may be assigned or subcontracted by Vendor without the prior written approval of Wells Fargo.  Wells Fargo may assign any benefits or obligations under this Purchase Order to any subsidiary or affiliate.  Any monies due Vendor from Wells Fargo can be set off from any monies due Wells Fargo from Vendor whether or not under this Purchase Order.  A party's failure to insist on any right will not operate as a waiver of any other right.  Time is of the essence in the performance of Vendor's obligations under this Purchase Order.

17.    No entertainment, gift, gratuity, money, or object of value (each, a #Gift") will be paid, offered, given or promised by Vendor or any of its employees, agents, officers, directors, managers or members (each, a #Vendor Individual"), to any employee, agent, officer, director, manager or member of Wells Fargo (each, a #Wells Fargo Individual"), nor will any Vendor Individual obtain or solicit, directly or indirectly, from any Wells Fargo Individual a Gift in violation of Wells Fargo's Code of Ethics.  Vendor will immediately report to Wells Fargo any situation not in compliance with this Paragraph.

18.    ANTI-BRIBERY AND CORRUPTION: If in the course of providing the Services the Vendor acts as Wells Fargo's intermediary or agent with unrelated third parties (including individuals associated with U.S. and foreign governmental entities), or if the Vendor is otherwise required to do so by the terms of this Purchase Order, then the Vendor represents and warrants to Wells Fargo that:

    a. the Vendor and its personnel are currently complying, and have at all times complied, with the Foreign Corrupt Practices Act of 1977, as amended ("FCPA"), and, to the extent applicable to the Vendor either directly or because of the Vendor's engagement with Wells Fargo, 18 USC §201, 18 USC §1951, (the "Hobbs Act"), 18 USC §1952, (the "Travel Act")or any other law of any non-United States jurisdiction relating to anti-corruption or bribery, including the United Kingdom Bribery Act of 2010, as amended (collectively with the FCPA, "Anti-corruption Laws");

    b. in accordance with the risks of its business type and the locatio ns in which it operates, the Contractor has implemented an anti-corruption compliance program that includes internal controls, policies and procedures, management oversight, monitoring, audit, governance and training, to ensure compliance with the Anti-Corruption Laws ("Anti-Corruption Program"); and

    c. after the Vendor's reasonable inquiry, or alternatively, based on compliance with its Anti-Corruption Program (which has been in existence for at least five (5) years prior to the date of this Agreement), neither the Vendor nor its personnel have during the five (5) years prior to the date of this Purchase Order:

        i. taken any direct or indirect action that would result in a violation of Anti-Corruption Laws, including making, offering or authorizing any bribe, facilitation or other payment, gift, entertainment, rebate, or any other thing of value to any government official or employee, political party or official, or candidate, a public international organization, a commercial entity or individual, whether tangible or intangible, to secure an improper advantage;

        ii. been under an administrative, civil or criminal investigation, in connection with alleged or possible violations of Anti-Corruption Laws;nor

        iii. received notice from, or made a voluntary disclosure to, any governmental entity, including the U.S. Department of Justice or the U.S. Securities and Exchange Commission regarding alleged or possible violations of any Anti-Corruption Laws, and

        iv. the Vendor's financial records are sufficiently accurate and complete to demonstrate its compliance with the Anti-Corruption Laws, represent actual bona fide transactions, and have been maintained in accordance with sound business practices, including the maintenance of adequate internal accounting controls.

If the Vendor suspects any breach of this clause 17 or violation of applicable Anti-Corruption Laws by the Vendor or its personnel, to the fullest extent permitted by law, the Vendor will promptly notify Wells Fargo in writing of its suspicions and cooperate with Wells Fargo in the resolution of issues raised.